Filed 10/24/22 P. v. Coffman CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>MARLENE COFFMAN,<br><br>　　　Defendant and Appellant. | F082161<br><br>(Super. Ct. No. MF013783B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. David R. Zulfa, Judge.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Marlene Coffman was convicted by jury of accessory to a felony for driving Roque Larios[1] away from a shooting he just committed. On appeal, she challenges her conviction by alleging the prosecutor committed error. She also asks us to review the "*Pitchess* proceedings" below.[2] Finding no error, we affirm the judgment.

## BACKGROUND

**Charge**

The Kern County District Attorney charged Coffman with violating Penal Code section 32, accessory to a felony.

**Evidence**

The victim testified he was in a "sexual relationship" with Coffman. Larios was also in a relationship with Coffman. On one occasion, Larios approached the victim in an alley and challenged him to a fight. No fight ensued but Larios did fire a gunshot at the victim.

Three days later, Larios confronted the victim in Coffman's home and said, "I thought I told you to stay away from … here."[3] He then stated, "You better get out of here before I blast you, fool." The victim hesitated and Larios shot him twice.

An eyewitness testified she heard the gunshots and then saw a man run to a car, enter it, and "dr[i]ve off real fast." Coffman was the driver. Larios and Coffman were arrested together about one week later.

---

[1] Larios was charged with several crimes including attempted murder and firearm assault. He was convicted by the same jury and appeals separately in related case No. F082078.

[2] See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). *Pitchess* motions, as they are commonly known, are simply motions to discover confidential law enforcement records.

[3] The alley where the prior confrontation took place is near Coffman's home.

**Inadmissible Evidence**

The jury inadvertently heard the victim state Larios "had just got out of prison, I guess …." This statement was contained in an unredacted video recording but not in the accompanying transcript. The video was later redacted to conform to the transcript.

**Verdict and Sentence**

Coffman was convicted as charged. She was granted probation with various terms and conditions including serving one year in county jail.

## DISCUSSION

Coffman argues "prosecutorial error in violating court's order [*sic*] by failing to redact [the victim's] statement that Larios 'just got out of prison' should have resulted in a mistrial." She also asks us to "review the sealed record of the *Pitchess* proceedings below to ensure that the trial court followed the proper procedures."

The People dispute prosecutorial error. They also claim reviewing the "*Pitchess* proceedings would be an idle act because" the officer in issue did not testify at the trial.

We find no prosecutorial error and, as explained below, do not believe reviewing the *Pitchess* proceedings is an idle act. Nonetheless, having reviewed the record we find no prejudice.

**I. No Prosecutorial Error**

Coffman argues "prosecutorial misconduct in exposing jury to evidence of Larios's prior criminality requires reversal as a denial of due process under the federal Constitution." Alternatively, she suggests "prosecutorial misconduct or error in exposing jury to evidence of Larios's prior criminality also requires reversal as a deceptive or reprehensible tactic under California authorities."

The People simply state there was no prejudice. We find there was no prosecutorial misconduct.

## A. Additional Background

Prior to jury trial, the trial court granted Larios's motion in limine to exclude from evidence "all references" to the fact he was "on supervision." The court noted, "[T]o the extent that, for example," Larios's "parole status has been excluded, that is information you would need to share with" the witnesses.

During the trial, the prosecutor presented a video recording of a law enforcement interview with the victim. An initial attempt to play the video was halted by the court. The court explained to the jury there was "an issue with the disk" and it would be addressed "tomorrow morning."

The following morning, an edited recording was played for the jury. When the video concluded, the prosecutor asked for a sidebar outside the jury's presence. The jury was excused from the courtroom and the parties discussed the fact the video was insufficiently redacted. In the court's words, "there was a portion [of the video] that did not appear on the transcript … that was not to be in there relating to a potential statement regarding … Larios and being in prison or having just gotten out of prison, something of that nature."

Later, Larios's counsel filed a motion for a mistrial.[4] At the hearing on the motion, counsel argued "the defense … very assiduously … guarded the fact" Larios had a "prior conviction" and "that he went to prison …." Counsel explained protecting that fact impacted jury selection because "the jury" was "not asked" how "they feel about a client having convictions and whether they can sit on a jury knowing that fact, whether they can overcome that fact." Counsel added the prior conviction fact impacted opening statement because she "would never do an opening statement where [she] do[es] not mention the fact that, 'Hey, you know, the client has prior convictions.' "

---

[4] The later filing complied with the court's wish. The court, speaking about the mistrial motion, stated, "I don't want to have the motion made sort of on the fly if we don't have to do that, and so we are going to hear that motion on Monday morning."

4.

The court concluded "there is no doubt that an erroneous admission of evidence occurred." The court believed it could "address [the issue] adequately with a curative instruction" and subsequently denied the motion. Ultimately, Larios's counsel "decided to forego a curative instruction." Accordingly, the jury was not instructed to disregard the victim's statement Larios "had just got out of prison, I guess …."

**B. Analysis**

" 'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights—such as a comment upon the defendant's invocation of the right to remain silent—but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " ' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 679 (*Fuiava*).) " '[I]t is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony" or present inadmissible evidence, but "merely eliciting evidence is not misconduct.' " (*Ibid.*)

At the outset, we note in a similar situation, the California Supreme Court has recognized the decision to forgo a curative admonition forfeits a prosecutorial misconduct claim. (*People v. Valdez* (2004) 32 Cal.4th 73, 124-125 (*Valdez*) [prosecutorial misconduct claim forfeited where counsel rejected curative admonition after witness improperly referred to defendant's "custodial status"].) Nonetheless, we address the arguments on their merits. (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1014 [discretion to address forfeited claims].)

Here, it does not appear the prosecutor intentionally elicited inadmissible evidence. The transcript itself was redacted and, based on the record, no other redactions

5.

were missed. It appears the error was negligent, not malicious.[5] The prosecutor's conduct here, though regrettable, was neither deceptive nor reprehensible. There is no suggestion the prosecutor was deceptive or reprehensible in any other manner. (See generally, e.g., *People v. Hill* (1998) 17 Cal.4th 800, 823-839 [examples of deceptive or reprehensible conduct include misstating evidence, misstating law, irrelevant religious references, witness intimidation, "juvenile courtroom behavior," "[r]udeness and intemperance," and "derisive" or "derogatory comments" directed towards opposing counsel].) In sum, there is no prosecutorial misconduct based on deceptive or reprehensible conduct. Likewise, there is no reason to believe the trial was infected and fundamentally unfair.

In truth, the claim presented is an inadmissible evidence claim. " 'When evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error.' " (*People v. Young* (2019) 7 Cal.5th 905, 931.) This standard is not met.

The inadvertently admitted evidence was speculative. The jury heard the victim state he *guessed* Larios had recently been released from prison. Speculation is not evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735.) There is no reason to believe the jury would base its verdict on a guess.[6]

To the extent Coffman is challenging the ruling to deny the mistrial motion, we find no error. A ruling denying a mistrial motion is reviewed for abuse of discretion.

---

[5] Coffman argues the prosecutor's "actions went well beyond anything that could be considered negligent, and must be characterized as at least reckless." Even if we agreed the prosecutor was reckless, our conclusion would not change. Adducing inadmissible evidence is misconduct only when *intentional*. (*Fuiava, supra,* 32 Cal.4th at p. 679.) The record does not support intentionality.

[6] We also note Larios was acquitted of a charge alleging he shot at the victim in the alley. Because Coffman and Larios were tried by the same jury, this dispels any inference of bias. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1131-1132.) In other words, the jury demonstrated its ability to fairly evaluate the evidence free from bias.

(*People v. Schultz* (2020) 10 Cal.5th 623, 673.) The challenging party bears the burden to show the trial court abused its discretion. (*People v. Maury* (2003) 30 Cal.4th 342, 437.)

Put simply, the court here did not abuse its discretion in finding a curative admonition was sufficient to dispel any prejudice. A mistrial motion is properly denied where there is no prosecutorial misconduct and the reference to criminal history is "brief and isolated …." (*Valdez, supra,* 32 Cal.4th at p. 128.) That is the case here. Indeed, "[t]he California Supreme Court has consistently found vague and fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury."[7] (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.) This case is no exception.

For all these reasons, the inadmissible evidence was not prejudicial. Accordingly, we reject the prosecutorial misconduct claim.[8]

## II. *Pitchess* **Review**

In the remaining claim, Coffman asked us to "review the sealed record of the *Pitchess* proceedings below to ensure that the trial court followed the proper procedures." The People responded review "would be an idle act because [the officer whose records are at issue] did not testify before the jury."

After the parties completed briefing earlier this year, we reviewed the *Pitchess* records and learned some records were purged while the case was pending on appeal. We notified the parties and solicited additional briefing on the matter. (See Gov. Code, § 68081.)

---

[7] To reiterate, Coffman decided to forgo a curative admonition.

[8] Notably, in a similar situation, the California Supreme Court has recognized the decision to forgo a curative admonition forfeits a prosecutorial misconduct claim. (*People v. Valdez* (2004) 32 Cal.4th 73, 124-125 (*Valdez*) [prosecutorial misconduct claim forfeited where counsel rejected curative admonition after witness improperly referred to defendant's "custodial status"].)

In the supplemental briefs, Coffman claims we are "unable to conduct any sort of review," citing *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*). She concludes "the failure to preserve the evidence [here] is due to bad faith," and "*People v. Gaines* (2009) 46 Cal.4th 172, prescribes a remand to determine prejudice." The People, for their part, maintain there is no prejudice "because the subject of the *Pitchess* motion did not testify."

We do not agree the fact the officer at issue did not testify is dispositive. Nor do we agree we are unable to meaningfully review the records or the records were purged in bad faith. Having reviewed the available records, we find no prejudicial error.

**A. Additional Background**

Prior to trial, Coffman filed a motion seeking "discovery of law enforcement personnel records" relating to a specific law enforcement officer. The motion sought evidence of "(1) false statements in reports, (2) false and/or inaccurate testimony, (3) any other evidence of or complaints of dishonesty, (4) bias, and/or (5) documented incidents in which the officer's [*sic*] omitted material facts in their reports."

After soliciting argument on the motion, the court granted the request to review the officer's records in camera. During the in camera review, the custodian of records was sworn in to tell the truth.[9] The custodian produced the officer's personnel file and the court ensured the file contained all the records necessary for review.

The court determined two records were necessary to review. Both are described with specificity in the record. The first simply contained no information; it was an apparent notice about a potential, nondescript investigation. But there was no actual follow up. As for the second document, the court determined it did not relate to the nature of the motion, i.e., the officer's credibility. It also determined the document was

---

[9] In *People v. White* (2011) 191 Cal.App.4th 1333, 1335, the appellate court held "the custodian must be placed under oath." We note this fact, and law, because Coffman specifically asks us to "ensure that the custodian testified under oath …."

more than five years old. The court did not copy the record and instead returned the entire file to the custodian. The court then announced to the parties it reviewed "the relevant documents and files, and have ordered no discovery pursuant to that review."

After the trial was completed, Coffman filed this appeal. As noted, she sought review of the court's ruling finding no discovery was warranted. As part of the appellate process, we granted a motion to augment the record and ordered the superior court to provide:

> "1. The oral proceedings of the in camera hearing conducted on September 2, 2020, pursuant to appellant's *Pitchess* motion, as described in the above mentioned motion.
>
> 2. The files which were reviewed at the in camera hearing held on September 2, 2020, pursuant to appellant's *Pitchess* motion.
>
> 3. The clerk's transcript consisting of the material described in item No. []2 of the above mentioned motion."

The order also noted, "[i]f the superior court did not keep copies of the files described in item No. 2 above," it was "directed to conduct further proceedings to prepare a settled statement in accordance with the applicable rules of the California Rules of Court and described as follows:

> "The superior court is directed to order the files described in item No. 2 above from the custodian of those files. Upon receipt of said files, the superior court is directed to conduct confidential in camera proceedings during which the files are reviewed and to prepare a confidential settled statement stating: (1) whether the files received from the custodian are the same files the court examined at the in camera hearing held on September 2, 2020; (2) whether any other files were examined at the in camera hearing held on September 2, 2020, that were not received from the custodian and describe the contents of those missing files as completely as possible within the court's recollection; and (3) any other pertinent information."

9.

The court complied with this order by conducting further proceedings to prepare a settled statement.[10]

The court's settled statement explained it retrieved the file from the custodian, reviewed it, and determined it was the same file it previously reviewed, but with two notable exceptions: both records described above were no longer part of the record. The court confirmed it recalled the second document described above but did not mention whether it recalled the first document.

In connection with our order, the custodian of records filed a declaration which was filed under seal along with the court's settled statement. The declaration explained the missing records were purged due to age.

**B. Analysis**

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a [law enforcement] officer accused of misconduct against the defendant. (Evid.Code, § 1043, subd. (b).) Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.] If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations (see Evid.Code, § 1045, subds. (b)-(e)), 'the trial court should then disclose to the defendant "such information [that] is relevant to the

---

[10] To the extent necessary, we judicially notice our order filed on March 24, 2021. (Evid. Code, § 452, subd. (d).)

10.

subject matter involved in the litigation." ' " (*People v. Gaines* (2009) 46 Cal.4th 172, 179.)

"When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself. [Citation.] A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records. (See Pen. Code, § 832.8.) Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review. But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court. Such practice is consistent with the premise of Evidence Code sections 1043 and 1045 that the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records. The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion. A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record." (*Mooc, supra,* 26 Cal.4th at pp. 1228—1229.)

"The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review. If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined.

Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent. Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed." (*Mooc, supra,* 26 Cal.4th at p. 1229, fn. omitted.)

At the outset, we first address the People's argument the fact the officer did not testify obviates prejudice. We disagree with the People because an officer, hypothetically, might influence a case by coaching or directing witnesses, or by falsifying evidence.[11] These hypothetical facts are relevant notwithstanding the fact a specific officer did not ultimately testify.

Turning to the merits, our review reveals no reason to grant relief. "The sealed record … here includes a full transcript of the … in camera hearing[], but not the actual personnel file[] that formed the basis of the trial court's ruling barring disclosure …. The sealed transcript that is before us, in which the court 'state[d] for the record what documents it examined,' is adequate for purposes of conducting a meaningful appellate review." (*People v. Myles* (2012) 53 Cal.4th 1181, 1209.)

Based on our understanding of the entire record, the court conscientiously reviewed the officer's personnel file and determined nothing was discoverable relative to Coffman's motion.[12] It is unfortunate the records were purged while this case was pending appeal. But that is no basis for relief. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1221, fn. 10 [no constitutional error absent bad faith]; *People v. Nguyen* (2017)

_____

[11] There is no suggestion these, or similar, actions occurred in this case. But we note the possibility because such conduct would fall within Coffman's motion for discovery.

[12] For clarity, we see nothing else in the file which would cause us concern.

12 Cal.App.5th 44, 47—48 ["Our review of the trial court's *Pitchess* motion determination is for an abuse of discretion."].)  Finally, we note disclosure of conduct more than five years old, as noted by the court, was barred at the time by Evidence Code section 1045.[13]  (Cf. *People v. McDaniel* (2021) 12 Cal.5th 97, 134 ["such information may still be" disclosed if "required" by the constitution].)  Accordingly, the trial court's ruling denying discovery will stand.

## DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


LEVY, ACTING P. J.


SMITH, J.

---

[13] Evidence Code section 1045 has since been amended deleting the time bar. (Senate Bill No. 16 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 402, § 1.)